**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| JORDAN SCHNUR, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Civil Case No. 2:22-cv-01620-NR |
| v. | |
| PAPA JOHN'S INTERNATIONAL, INC., d/b/a PAPA JOHN'S, | |
| Defendant. | |

**<u>DEFENDANT'S BRIEF IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT</u>**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

THE AMENDED COMPLAINT'S ALLEGATIONS .................................................... 2

ARGUMENT ..................................................................................................................... 3

I.     PAPA JOHN'S IS NOT SUBJECT TO PERSONAL JURISDICTION ON
THESE CLAIMS. ................................................................................................... 3

     A.    The Amended Complaint Fails To Support the Exercise of Specific
Jurisdiction Against Papa John's Under *Calder*. ....................................... 4

     B.    The Amended Complaint Fails the Alternative "Minimum Contacts" Test........... 7

II.    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM. .................................. 9

     A.    The Amended Complaint Fails To State a Claim Under the Pennsylvania
Wiretap Act. ................................................................................................ 10

          1.    The Amended Complaint Fails To Plead Unlawful "Interception."......... 10

          2.    All Parties Consented to Papa John's Data Practices. ............................. 16

     B.    The Amended Complaint Fails To State a Claim for Intrusion Upon
Seclusion. ..................................................................................................... 18

CONCLUSION.................................................................................................................. 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ajax Enters., Inc. v. Szymoniak L. Firm, P.A.*,
2008 WL 1733095 (D.N.J. Apr. 10, 2008) ...................................................................5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................9, 10, 13, 15

*Bomberger v. Am. Airlines, Inc.*,
2018 WL 3416386 (E.D. Pa. July 12, 2018) .............................................................9

*Boring v. Google, Inc.*,
598 F. Supp. 2d 695 (W.D. Pa. 2009)........................................................................20

*Bristol-Myers Squibb Co. v. Super Ct. of Cal.*,
137 S. Ct. 1773 (2017)...............................................................................................3, 9

*Brooks Grp. & Assocs., Inc. v. LeVigne*,
2014 WL 1490529 (E.D. Pa. Apr. 15, 2014) .........................................................18

*Buck v. Hampton Twp. Sch. Dist.*,
452 F.3d 256 (3d Cir. 2006)........................................................................................17

*M.H. ex rel. C.H. v. Omegle.com LLC*,
2021 WL 1050234 (D.N.J. Mar. 19, 2021)..............................................................5, 7

*Calder v. Jones*,
465 U.S. 783 (1984)........................................................................................... *passim*

*Cardoso v. Whirlpool Corp.*,
2021 WL 2820822 (S.D. Fla. July 6, 2021)..........................................................12, 15

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) ......................................................................13

*Chicarella v. Passant*,
494 A.2d 1109 (Pa. Super. 1985)..............................................................................20

*Commonwealth v. Byrd*,
235 A.3d 311 (Pa. 2020) ......................................................................................17, 18

*Commonwealth v. Cruttenden*,
58 A.3d 95 (Pa. 2012) ................................................................................................16

*Commonwealth v. Diego*,
  119 A.3d 370 (Pa. Super. Ct. 2015)......................................................13, 16, 18

*Commonwealth v. Gamby*,
  283 A.3d 298 (Pa. 2022) ..................................................................................12

*Commonwealth v. Hart*,
  28 A.3d 898 (Pa. 2011) ...................................................................................11

*Commonwealth v. Lassiter*,
  722 A.2d 657 (Pa. 1998) ..................................................................................13

*Commonwealth v. Proetto*,
  771 A.2d 823 (Pa. Super. 2001).................................................................15, 18

*Connelly v. Steel Valley Sch. Dist.*,
  706 F.3d 209 (3d Cir. 2013)..............................................................................20

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014).............................................................................................3

*Danziger & De Llano, LLP v. Morgan Verkamp LLC*,
  948 F.3d 124 (3d Cir. 2020)...........................................................................3, 4

*Fidrych v. Marriott Int'l, Inc.*,
  952 F.3d 124 (4th Cir. 2020) .............................................................................6

*Fraser v. Nationwide Mut. Ins. Co.*,
  352 F.3d 107 (3d Cir. 2003)......................................................................10, 14

*Goldstein v. Costco Wholesale Corp.*,
  559 F. Supp. 3d 1318 (S.D. Fla. 2021) .............................................................14

*Gonzalez v. Uber Techs., Inc.*,
  305 F. Supp. 3d 1078 (N.D. Cal. 2018) ............................................................15

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  564 U.S. 915 (2011).............................................................................................9

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
  806 F.3d 125 (3d Cir. 2015)..............................................................................14

*Gray v. Amazon.com, Inc.*,
  2023 WL 1068513 (W.D. Wash. Jan. 27, 2023)................................................19

*Hartford Steam Boiler Inspection v. Int'l Glass Prods., LLC*,
  2016 WL 5468111 (W.D. Pa. Sep. 29, 2016) ....................................................13

*IMO Indus., Inc. v. Kiekert AG*,
   155 F.3d 254 (3d Cir. 1998)............................................................................. *passim*

*Inman v. Technicolor USA, Inc.*,
   2011 WL 5829024 (W.D. Pa. Nov. 18, 2011) .........................................................17

*Jacome v. Spirit Airlines Inc.*,
   2021 WL 3087860 (Fla. Cir. Ct. June 17, 2021) ......................................11, 12, 15

*Kennedy v. Help at Home, LLC*,
   731 F. App'x 105 (3d Cir. 2018) ...........................................................................20

*Kim v. Korean Air Lines Co.*,
   513 F. Supp. 3d 462 (D.N.J. 2021) .........................................................................8

*Kline v. Sec. Guards, Inc.*,
   386 F.3d 246 (3d Cir. 2004) .................................................................................19

*Klumb v. Goan*,
   884 F. Supp. 2d 644 (E.D. Tenn. 2012)................................................................12

*Kyko Glob., Inc. v. Bhongir*,
   807 F. App'x 148 (3d Cir. 2020) .............................................................................4

*LaSala v. Marfin Popular Bank Pub. Co.*,
   410 F. App'x 474 (3d Cir. 2011) .............................................................................6

*In re Lipitor Antitrust Litig.*,
   868 F.3d 231 (3d Cir. 2017)..................................................................................17

*Luis v. Zang*,
   833 F.3d 619 (6th Cir. 2016) ................................................................................13

*Marten v. Godwin*,
   499 F.3d 290 (3d Cir. 2007)................................................................................4, 7

*Maser v Deeble*,
   2017 WL 930795 (W.D. Pa. Mar. 9, 2017) ............................................................4

*Mason v. Mach. Zone, Inc.*,
   140 F. Supp. 3d 457 (D. Md. 2015) ......................................................................11

*Massie v. Gen. Motors Co.*,
   2021 WL 2142728 (E.D. Cal. May 26, 2021) ......................................................5, 9

*McDermott v. Clondalkin Grp., Inc.*,
   649 F. App'x 263 (3d Cir. 2016) ...........................................................................10

- iv -

*Miller v Native Link Constr. LLC*,
    2017 WL 3536175 (W.D. Pa. Aug. 17, 2017) ........................................................8

*Nagy v. Bell Tel. Co. of Pa.*,
    436 A.2d 701 (Pa. Super. 1981)........................................................................20

*In re Nickelodeon Consumer Priv. Litig.*,
    827 F.3d 262 (3d Cir. 2016)..............................................................................18

*O'Donnell v. United States*,
    891 F.2d 1079 (3d Cir. 1989)............................................................................19

*Oyebanji v. Palmetto Vacation Rentals LLC*,
    2021 WL 3732883 (D.N.J. Aug. 20, 2021) ..........................................................8

*Patchen v. McGuire*,
    2012 WL 4473233 (E.D. Pa. Sept. 27, 2012) .......................................................7

*Popa v. Harriet Carter Gifts, Inc.*,
    426 F. Supp. 3d 108 (W.D. Pa. 2019)......................................................12, 16, 20

*Popa v. Harriet Carter Gifts, Inc.*,
    52 F.4th 121 (3d Cir. 2022) ....................................................12, 16, 17, 18

*Potter v. Havlicek*,
    2008 WL 2556723 (S.D. Ohio June 23, 2008) ...................................................11

*Pro Golf Mfg., Inc. v. Tribune Rev. Newspaper Co.*,
    809 A.2d 243 (Pa. 2002).................................................................................20

*Remick v. Manfredy*,
    238 F.3d 248 (3d Cir. 2001)...............................................................................6

*Rickman v. BMW of N. Am., LLC*,
    538 F. Supp. 3d 429 (D.N.J. 2021) ......................................................................7

*Sacco v. Mouseflow, Inc.*,
    2022 WL 4663361 (E.D. Cal. Sept. 30, 2022)...................................................5, 6

*Saleh v. Nike, Inc.*,
    562 F. Supp. 3d 503 (S.D. Cal. 2021).................................................................19

*Scott v. Lackey*,
    587 F. App'x 712 (3d Cir. 2014) .........................................................................6

*Shefts v. Petrakis*,
    2012 WL 4049484 (C.D. Ill. Sept. 13, 2012) ....................................................13

*Shuker v. Smith & Nephew, PLC,*
    885 F.3d 760 (3d Cir. 2018)...........................................................................7

*Stein v. Matheson,*
    539 F. Supp. 3d 463 (E.D. Pa. 2021) ........................................................8

*Toys "R" Us, Inc. v. Step Two, S.A.,*
    318 F.3d 446 (3d Cir. 2003)........................................................................5

*Tracy v. P.N.C. Bank, N.A.,*
    2021 WL 3682198 (W.D. Pa. Aug. 19, 2021) ......................................10

*United States v. Ackies,*
    918 F.3d 190 (1st Cir. 2019).....................................................................12

*United States v. Barrington,*
    648 F.3d 1178 (11th Cir. 2011) ...............................................................12

*United States v. Bowers,*
    2021 WL 2882438 (W.D. Pa. July 8, 2021) ........................................19

*Walden v. Fiore,*
    571 U.S. 277 (2014)..............................................................................6, 8

*Walsh v. Krantz,*
    386 F. App'x 334 (3d Cir. 2010) .............................................................14

*Yoon v. Lululemon USA, Inc.,*
    549 F. Supp. 3d 1073 (C.D. Cal. 2021) ................................................14

*In re Zynga Priv. Litig.,*
    750 F.3d 1098 (9th Cir. 2014) .................................................................14

**Statutes**

18 Pa. C.S. § 5702..........................................................................10, 11, 13, 14

18 Pa. C.S. § 5704..................................................................................10, 16

18 Pa. C.S. § 5725.........................................................................................10

18 U.S.C. § 2510 ..........................................................................................14

**Other Authorities**

Black's Law Dictionary (11th ed. 2019)........................................................11

Federal Rule of Civil Procedure 12 ................................................................9

## INTRODUCTION

This is one of many copycat lawsuits challenging the routine use of web-based software services that help companies analyze and improve their website design and online user experience. Plaintiff Jordan Schnur acknowledges that Papa John's uses "session replay" software to collect and analyze information about visitor traffic and activity on its website for the purpose of improving its digital platform.   Papa John's filed a motion to dismiss Mr. Schnur's initial Complaint for lack of personal jurisdiction or, alternatively, failure to state a claim.   In response, Mr. Schnur filed an Amended Complaint.   The Amended Complaint, however, is not materially different from the original, and should be dismissed with prejudice for the reasons set forth below.

*First*, the Court lacks personal jurisdiction over Papa John's, which is not subject to general jurisdiction in Pennsylvania or to specific jurisdiction with regard to Mr. Schnur's alleged claims. The service Mr. Schnur challenges is nationwide in scope, and not aimed at Pennsylvania specifically.   Accordingly, the Amended Complaint does not allege facts plausibly showing that Papa John's expressly aimed session replay at Pennsylvania, as required to establish specific jurisdiction for intentional torts under the *Calder* "effects" test.   Nor has Mr. Schnur alleged facts establishing specific jurisdiction under the alternative "minimum contacts" test, even if it applied.

*Second*, the Amended Complaint fails to state a claim under the Pennsylvania Wiretap Act. Mr. Schnur does not allege the use of a "device" to acquire the "contents" of any communication within the meaning of the statute.   Nor does the Amended Complaint plausibly allege an interception that occurred contemporaneously with transmission.   Finally, Mr. Schnur consented to the complained-of practices when he purchased food on Papa John's website.

*Third*, the Amended Complaint fails to state a claim for intrusion upon seclusion.   The facts alleged do not support a reasonable inference that Papa John's committed an intentional intrusion,

that Mr. Schnur had a reasonable expectation of privacy over the information at issue, or that the use of session replay technology is highly offensive.

**THE AMENDED COMPLAINT'S ALLEGATIONS**

The Amended Complaint alleges that Papa John's "embed[ded] Session Replay Code on its website" and used that technology to collect information about visitors' "mouse movements, clicks, keystrokes (such as text being entered into an information field or text box), URLs of web pages visited, and/or other electronic communications in real-time." Amended Complaint ("Am. Compl.") ¶¶ 1, 96. Like many companies with commercial websites, Papa John's uses digital tools, including "session replay" software, to review, analyze, and improve the visitor experience on its website. *Id*. ¶¶ 12–13, 22. Companies use such technology to "improve customer experiences" and to "refine their marketing strategies." *Id.* ¶ 12.

Papa John's disclosed its data collection, use and sharing practices to visitors on its website. Papa John's Privacy Policy, displayed and hyperlinked at the bottom of each website page, stated that Papa John's "collect[s] information about your interactions and use of [its] website," and uses that information "to make [the] website . . . better [and] to customize your experience." *Papa John's Privacy Policy*, PAPA JOHN'S, *available at* http://web.archive.org/web/20221122130759/ https://www.papajohns.com/privacy-policy.html ("Papa John's Privacy Policy"), attached as Ex. 1 to Declaration of Ziwei Song. Papa John's further explains it "will share information with others who perform services on [its] behalf," including "vendors . . . maintaining and operating [its] web site and applications, [and providing] data analytic services, and other business purposes." *Id*. Website visitors like Mr. Schnur who "purchase[] food from Papa John's website" (Am. Compl. ¶ 59) are required to check a box stating "I understand & agree my information will be used as described in the Privacy Policy" before completing their orders. *See* Declaration of Joshua Hall, ¶¶ 3–6, Ex. 1.

Mr. Schnur, a Pennsylvania resident, alleges that while visiting Papa John's website, his "Website Communications" were "captured by Session Replay Code[]" and sent to various "Session Replay Providers."  Am. Compl. ¶¶ 60–61.  He alleges that Papa John's violated the Pennsylvania Wiretapping and Electronic Surveillance Control Act ("Pennsylvania Wiretap Act"), *id.* ¶¶ 85–102, and committed common law intrusion upon seclusion, *id.* ¶¶ 103–116.  Mr. Schnur purports to bring these claims on behalf of a proposed class of "[a]ll natural persons in Pennsylvania whose Website Communications were captured in Pennsylvania through the use of Session Replay Code embedded in www.papajohns.com."  *Id.* ¶ 76.

## ARGUMENT

## I.     PAPA JOHN'S IS NOT SUBJECT TO PERSONAL JURISDICTION ON THESE CLAIMS.

Mr. Schnur bears the burden of establishing personal jurisdiction.  *See Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 129 (3d Cir. 2020).  Mr. Schnur does not, nor could he, assert that Papa John's is subject to general jurisdiction in Pennsylvania.  "[O]nly a limited set of affiliations with a forum will render a defendant amenable to general jurisdiction," *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 582 U.S. 255, 262 (2017) (citation omitted), including where a corporate defendant "is incorporated or has its principal place of business [in the forum state]," *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).  Neither condition is met here.  *See* Am. Compl. ¶ 6 (alleging Papa John's is a Delaware corporation with its principal place of business in Georgia).

Mr. Schnur instead pleads specific jurisdiction.  *See id.* ¶ 8.  To establish specific jurisdiction, however, he must demonstrate that: (1) Papa John's has constitutionally sufficient "minimum contacts" with the forum, and (2) the exercise of jurisdiction would comport with "traditional notions of fair play and substantial justice."  *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d

254, 259–60 (3d Cir. 1998).   The "minimum contacts" requirement is analyzed differently depending on the claim asserted.  *See Maser v Deeble*, 2017 WL 930795, at *4 (W.D. Pa. Mar. 9, 2017).  Because Mr. Schnur's claims are both intentional torts, the three-part "effects" test derived from *Calder v. Jones*, 465 U.S. 783 (1984), applies in this case.  *E.g.*, *Kyko Glob., Inc. v. Bhongir*, 807 F. App'x 148, 151–52 (3d Cir. 2020) (applying *Calder* test to intentional tort claims).

As explained below, neither the *Calder* test, nor the alternative "minimum contacts" test used for other types of claims, is satisfied by the Amended Complaint.

**A.  The Amended Complaint Fails To Support the Exercise of Specific Jurisdiction Against Papa John's Under *Calder*.**

The Amended Complaint fails to establish personal jurisdiction under the *Calder* test.  To satisfy that test, the facts alleged must demonstrate that (1) Papa John's committed an "intentional tort," (2) Mr. Schnur "felt the brunt of the harm" in Pennsylvania, and (3) Papa John's "expressly aimed" its conduct at Pennsylvania.  *IMO Indus.*, 155 F.3d at 265–66.  Personal jurisdiction cannot exist unless the third element—express aiming—is satisfied.  *Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007).  To satisfy that third element, the facts alleged must (i) "point to *specific activity* indicating that" Papa John's "expressly aimed" its conduct at Pennsylvania and (ii) show that Papa John's "knew" Mr. Schnur "would suffer the brunt of the harm" in Pennsylvania.  *IMO Indus.*, 155 F.3d at 266 (italics added).  The Amended Complaint's allegations show neither.

*First*, the Amended Complaint fails to plausibly allege that Papa John's expressly aimed the relevant conduct at Pennsylvania.  *Id*.  The Amended Complaint states in conclusory fashion that the "privacy violations complained of herein resulted from Defendant's purposeful and tortious acts directed towards citizens of Pennsylvania while they were located within Pennsylvania."   Am. Compl. ¶ 8.  But bare assertions cannot "establish[] with reasonable particularity" the requisite elements of personal jurisdiction, *see Danziger*, 948 F.3d at 129, and

the Amended Complaint provides no factual support for its conclusions.  To the contrary, the gravamen of the Amended Complaint is that Papa John's installed "session replay" software and collected interactive data on its nationally accessible website.  *See* Am. Compl. ¶¶ 1, 46, 56–57. "[M]ere operation of a commercially interactive web site," however, "should not subject the operator to jurisdiction anywhere in the world."  *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 451, 454–55 & n.6 (3d Cir. 2003).

Consistent with these principles, courts in this circuit evaluating personal jurisdiction in the Internet context have consistently declined to find "express aiming" when the defendant's alleged conduct was not specifically directed at the forum state.  *E.g.*, *id.* (no jurisdiction over operator of "international web sites" "accessible in the forum state" where plaintiff failed to show "intentionally tortious conduct *expressly aimed at*" forum state); *M.H. ex rel. C.H. v. Omegle.com LLC*, 2021 WL 1050234, at *3 (D.N.J. Mar. 19, 2021) (no jurisdiction over operator of "generally accessible website that looks and operates the same for users across the world"); *Ajax Enters., Inc. v. Szymoniak L. Firm, P.A.*, 2008 WL 1733095, at *5 (D.N.J. Apr. 10, 2008) (same).

For these same reasons, courts have dismissed similar claims involving "session replay" technology for lack of personal jurisdiction.  *E.g.*, *Sacco v. Mouseflow, Inc.*, 2022 WL 4663361, at *5 (E.D. Cal. Sept. 30, 2022) (finding no express aiming where "the recording of Plaintiff's visit to the . . . website and the collection of his personal data . . . would have occurred no matter the state Plaintiff was in," and "Defendant did nothing specifically directed at" forum or its residents); *Massie v. Gen. Motors Co.*, 2021 WL 2142728, at *4–6 (E.D. Cal. May 26, 2021) (no specific jurisdiction over claims "based on [session replay] software used to improve user experience and functionality on a nationally accessible website").  This Court should hold the same.

*Second*, the Amended Complaint fails to allege facts plausibly showing that Papa John's "knew" Mr. Schnur "would suffer the brunt of the harm" in Pennsylvania. *IMO Indus.*, 155 F.3d at 266. The Amended Complaint asserts that Papa John's "knew that its practices would directly result in collection of information from Pennsylvania citizens while those citizens browse www.papajohns.com." Am. Compl. ¶ 8. But "[g]iven that the website was . . . accessible worldwide, there is no basis to conclude that" Papa John's knew that any harm to Mr. Schnur "was likely to be caused" specifically in Pennsylvania. *Remick v. Manfredy*, 238 F.3d 248, 259 (3d Cir. 2001); *accord Sacco*, 2022 WL 4663361, at *5 n.2 (finding no knowledge of harm specific to California where "alleged harm would have occurred regardless of the location Plaintiff visited the . . . website"). Likewise, the assertion that Papa John's "knew" data concerning Pennsylvania residents would be collected (Am. Compl. ¶¶ 8, 9) is insufficient because "the foreseeability of harm being suffered in a forum is insufficient to establish personal jurisdiction under *Calder*." *LaSala v. Marfin Popular Bank Pub. Co.*, 410 F. App'x 474, 477 (3d Cir. 2011) (citation omitted).[1]

Nor do Mr. Schnur's allegations that he visited Papa John's website from Pennsylvania (Am. Compl. ¶ 55) change the outcome of the *Calder* analysis. This is precisely the sort of "unilateral activity" of a plaintiff that "cannot satisfy the requirement of contact with the forum State." *Walden v. Fiore*, 571 U.S. 277, 286, 290–91 (2014) (citation omitted) (finding no personal jurisdiction where plaintiffs would have experienced the same alleged injury "wherever else they might have traveled"); *accord Scott v. Lackey*, 587 F. App'x 712, 716 (3d Cir. 2014) ("Even in the context of an intentional tort . . . the 'unilateral activity of a plaintiff' do[es] not establish a basis

---

[1] The fact that visitors to Papa John's website can provide Papa John's with their location, *see* Am. Compl. ¶ 9, "does nothing to strengthen the jurisdictionally relevant connections between [Papa John's] and [Pennsylvania]." *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 142–43 (4th Cir. 2020) (fact that a hotel website allowed customers to "select their state of residence when making reservations" indicated only that "website was accessible to all but targeted no one in particular").

for personal jurisdiction.") (citation omitted).  In sum, because the Amended Complaint fails to plead "express aiming" as required to establish specific jurisdiction under the *Calder* test, the Amended Complaint should be dismissed.  *See Marten*, 499 F.3d at 297.

**B.      The Amended Complaint Fails the Alternative "Minimum Contacts" Test.**

Although the *Calder* test applies for the reasons explained above, dismissal on jurisdictional grounds also is warranted under an alternative test used for different claims requiring that (1) the defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum," and (2) the plaintiff's claim "is related to or arises out of" the defendant's forum contacts.  *IMO Indus.*, 155 F.3d at 259 & n.3.  That test also is not satisfied here because, as demonstrated above, the alleged activities giving rise to Mr. Schnur's claims were not expressly aimed at Pennsylvania.  *See Patchen v. McGuire*, 2012 WL 4473233, at *6 n.10 (E.D. Pa. Sept. 27, 2012) ("[G]enerally a plaintiff who cannot establish sufficient contacts under the effects test will also fail under the standard test."); *see also Omegle.com*, 2021 WL 1050234, at *5.

At most, Mr. Schnur's allegations regarding the accessibility of Papa John's website in Pennsylvania, *see* Am. Compl. ¶¶ 43, 55, and Papa John's marketing and sale of goods in the state, *id*. ¶ 8, indicate only that Papa John's offers its goods to the entire U.S. market.[2]  But "general efforts to target a U.S. market do not suffice to demonstrate deliberate targeting of [Pennsylvania] in particular."  *Rickman v. BMW of N. Am., LLC*, 538 F. Supp. 3d 429, 439 (D.N.J. 2021); *see also Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 780 (3d Cir. 2018) (no specific jurisdiction based on company's efforts "to exploit a national market" that "necessarily included Pennsylvania") (citation omitted).  For example, the Amended Complaint discusses Papa John's nationally televised Super Bowl commercial, *see* Am. Compl. ¶ 44, but that commercial was no more targeted

---

[2] Mr. Schnur concedes that Papa John's sells goods "in all fifty states."  Am. Compl. ¶ 42.

at Pennsylvania than any other state.  Personal jurisdiction arguments based on national advertising and marketing are frequently rejected, and this Court should as well.  *See, e.g.*, *Oyebanji v. Palmetto Vacation Rentals LLC*, 2021 WL 3732883, at *3 (D.N.J. Aug. 20, 2021) (collecting cases rejecting personal jurisdiction based on national advertising and marketing campaigns, even where defendant marketed products to customers in forum state).

In fact, there is *nothing* linking Papa John's and Mr. Schnur's claims to Pennsylvania beyond the allegation that Mr. Schnur accessed Papa John's website from within this state.  The Amended Complaint makes clear that Mr. Schnur's claims are connected to alleged conduct that occurred in Georgia, not Pennsylvania.  The claims arise from Papa John's alleged "procurement" of session replay software from a Georgia vendor (FullStory[3]) and the "use of" such software on a nationally accessible website operated from Georgia, where Papa John's principal place of business is located.  *See* Am. Compl.  ¶¶ 4, 6, 46–47.  Mr. Schnur's claims thus relate to alleged conduct that took place outside of Pennsylvania.

Mr. Schnur's location in Pennsylvania when he accessed Papa John's website does not create specific jurisdiction, because "the plaintiff cannot be the only link between the defendant and the forum."  *Walden*, 571 U.S. at 285.  Nor does having a website accessible in Pennsylvania; as courts in this circuit have explained time and again, "'[t]he mere operation of a commercially interactive web site' does not confer jurisdiction wherever that website may be accessed."  *Kim v.*

---

[3] The Court may take judicial notice that FullStory is incorporated in Delaware with its principal place of business in Georgia, as indicated on the Georgia Secretary of State's website, because such information "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  *Miller v Native Link Constr. LLC*, 2017 WL 3536175, at *6 & n.2 (W.D. Pa. Aug. 17, 2017) (citation omitted) (collecting cases taking judicial notice of citizenship information from state secretary of state filings); *Stein v. Matheson*, 539 F. Supp. 3d 463, 471 n.4 (E.D. Pa. 2021); *see also* Georgia Secretary of State, Business Search, https://ecorp.sos.ga.gov/BusinessSearch/BusinessInformation?businessId=1741233&businessTy pe=Foreign%20Profit%20Corporation&fromSearch=True (FullStory's registration page).

*Korean Air Lines Co.*, 513 F. Supp. 3d 462, 470 (D.N.J. 2021) (quoting *Toys "R" Us*, 318 F.3d at 454). Finally, Mr. Schnur's new allegation that he purchased pizza during his visits to Papa John's website does not matter, because his claims arise out of the alleged use of session replay technology and do not depend on or require any purchase.[4]  *See, e.g.*, *Bomberger v. Am. Airlines, Inc.*, 2018 WL 3416386, at *2–3 (E.D. Pa. July 12, 2018) (no specific jurisdiction against airline even though plaintiffs purchased airline tickets in Pennsylvania for flight departing from Pennsylvania because all "of the allegations that serve as the basis" for plaintiffs' claims occurred in another state); *see also Massie*, 2021 WL 2142728, at *6 (no personal jurisdiction over claims that "ar[o]se from and relate[d] to session recording software allegedly installed on . . . nationally accessible websites," and noting that the "claims have nothing to do with GM's sales").

Accordingly, the Amended Complaint fails to establish that Mr. Schnur's claims "aris[e] out of or relat[e] to [Papa John's] contacts with the *forum*," and "specific jurisdiction is lacking regardless of the extent of [Papa John's] unconnected activities in the State." *Bristol-Myers Squibb*, 582 U.S. at 262–64. The Amended Complaint should therefore be dismissed.[5]

## II.    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM.

Even if the Court finds that it has personal jurisdiction in this case, the Amended Complaint fails to state a viable claim for relief and should be dismissed under Rule 12(b)(6). A complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible only when it is supported by "factual content that allows the

---

[4] Similarly, pizza sales to others in Pennsylvania, *see* Am. Compl. ¶ 43, have no relation to Mr. Schnur's claims. *See, e.g.*, *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 930 n.6 (2011) ("[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales.").

[5] Because there is no personal jurisdiction over Papa John's under either the *Calder* effects test or the alternative "minimum contacts" analysis, the Court need not reach the separate question of whether it would be reasonable to exercise jurisdiction here. *See IMO Indus.*, 155 F.3d at 259.

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Tracy v. P.N.C. Bank, N.A.*, 2021 WL 3682198, at *1 (W.D. Pa. Aug. 19, 2021) (Ranjan, J.) (dismissing complaint where many "allegations [were] conclusory and perfunctory," while others were "inconsistent or otherwise lacking in sufficient detail").

A.   **The Amended Complaint Fails To State a Claim Under the Pennsylvania Wiretap Act.**

To state a claim under the Pennsylvania Wiretap Act, Mr. Schnur must allege facts plausibly showing that Papa John's (1) intercepted an electronic communication (2) without "prior consent." 18 Pa. C.S. §§ 5704(4), 5725(a). The Amended Complaint fails both elements.

1.   **The Amended Complaint Fails To Plead Unlawful "Interception."**

Mr. Schnur's Wiretap Act claim fails because Papa John's did not "intercept" his electronic communications as a matter of law. *See* 18 Pa. C.S. § 5725(a). The Pennsylvania Wiretap Act defines "intercept" as the "[a]ural or other acquisition of the *contents* of any wire, electronic or oral communication through the use of any electronic, mechanical or other *device*." *Id.* § 5702 (italics added). To be actionable, an "intercept" also "must occur contemporaneously with transmission." *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 113–14 & n.6 (3d Cir. 2003). The Amended Complaint does not plausibly allege any of these requirements.

***No Use of a "Device."*** The software technology at issue here is not a "device" within the meaning of the Pennsylvania Wiretap Act. Although the Amended Complaint improperly pleads a legal conclusion that session replay code "is a 'device,'" Am. Compl. ¶ 94,[6] the factual allegations refer to intangible "snippets of JavaScript computer code" that are "embed[ded]" on

---

[6] Legal conclusions are "unworthy of weight in analyzing the sufficiency" of the Amended Complaint. *McDermott v. Clondalkin Grp., Inc.*, 649 F. App'x 263, 268 (3d Cir. 2016).

Papa John's website, *see id.* ¶¶ 1, 46.  The Wiretap Act defines a "device" as "[a]ny *device* or *apparatus* . . . that can be used to intercept a wire, electronic or oral communication."  18 Pa. C.S. § 5702 (italics added).  Interpreting those words according to "common and approved usage," as required under Pennsylvania law, *Commonwealth v. Hart*, 28 A.3d 898, 908 (Pa. 2011), a "device" or "apparatus" means something *tangible*—not intangible software code.

Although Pennsylvania state courts have yet to address this specific issue, other courts have concluded that the "most natural reading" of the terms "device" and "apparatus" "calls to mind" something physical like "a piece of equipment," not software.  *E.g.*, *Mason v. Mach. Zone, Inc.*, 140 F. Supp. 3d 457, 462–63 (D. Md. 2015) (holding that software is not a "device" or "apparatus"), *aff'd*, 851 F.3d 315 (4th Cir. 2017).  This natural reading is supported by dictionary definitions, to which courts applying Pennsylvania law routinely refer when interpreting undefined statutory terms.  *E.g.*, *Hart*, 28 A.3d at 909 (explaining that a term's "common and approved usage may be ascertained by examining its dictionary definition").  Black's Law Dictionary, for example, defines "device" as "[a] mechanical invention" that "may be an apparatus or an article of manufacture," and directs readers to the term "machine" in the definitions of both "device" and "apparatus."  Black's Law Dictionary (11th ed. 2019) (describing "machine" as "consisting of fixed and moving parts").  A snippet of code on a website lacks physicality comparable to that of a "mechanical invention" or a "machine."  *See id.*

Consistent with this interpretation, multiple courts have held that "session replay" and similar software technologies are not a "device" or "apparatus" under federal and state wiretapping laws.  *E.g.*, *Potter v. Havlicek*, 2008 WL 2556723, at *8 (S.D. Ohio June 23, 2008) (dismissing federal wiretapping claim where software did not fit the dictionary definition of "device"); *Jacome v. Spirit Airlines Inc.*, 2021 WL 3087860, at *5 (Fla. Cir. Ct. June 17, 2021) (observing in "session

replay" case that "courts have held that software . . . [does] not constitute [a] device[] under the wiretapping statutes"); *Cardoso v. Whirlpool Corp.*, 2021 WL 2820822, at *2 (S.D. Fla. July 6, 2021) (agreeing with *Jacome*); *cf. United States v. Ackies*, 918 F.3d 190, 199 n.5 (1st Cir. 2019) (holding that "software is not a 'device' under its plain meaning").

The history of the Pennsylvania Wiretap Act compels the same conclusion. "In defining a statutory term," Pennsylvania courts "strive to determine its meaning at the time the General Assembly enacted the legislation," including by consulting dictionary definitions from the time of enactment. *Commonwealth v. Gamby*, 283 A.3d 298, 307 n.11 (Pa. 2022). The 1978 dictionary definitions of the terms "device" and "apparatus," like their modern counterparts, contemplated tangible things. *See* Merriam-Webster Dictionary (1978) (defining "device" as "a piece of equipment or a mechanism for a special purpose" and "apparatus" as "a set of materials or equipment for a particular use"). Notwithstanding several amendments in the intervening decades, the Pennsylvania legislature has not amended the Pennsylvania Wiretap Act to include intangible computer code. This Court should reject Mr. Schnur's invitation to rewrite the law by "invest[ing] old statutory terms with new meanings." *Gamby*, 283 A.3d at 307 n.11.[7]

In short, the weight of authority confirms that the plain and ordinary meaning of the statutory term "device" does not extend to a snippet of session replay code on Papa John's website.[8] And even if the Court were to find that term ambiguous, the rule of lenity would require

---

[7] *Popa v. Harriet Carter Gifts, Inc.*, 426 F. Supp. 3d 108 (W.D. Pa. 2019), does not preclude Papa John's argument. The district court considered, but did not resolve, whether software code on a website is a "device or apparatus." *Id.* at 116–17. Similarly, the Third Circuit only assumed this element without deciding that software code is a "device," as no party had appealed the issue. *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 131 n.8 (3d Cir. 2022).

[8] The case law added to the Amended Complaint, *see* Am. Compl. ¶ 94, did not analyze the issue under Pennsylvania law, and instead merely assumed that software could be a device without analysis. *See United States v. Barrington*, 648 F.3d 1178, 1203 (11th Cir. 2011) (assuming without deciding that software at issue "could be" device under federal law); *Klumb v. Goan*, 884 F. Supp.

that any such ambiguity be resolved in Papa John's favor.  *See Commonwealth v. Lassiter*, 722 A.2d 657, 660 (Pa. 1998); *see also Hartford Steam Boiler Inspection v. Int'l Glass Prods., LLC*, 2016 WL 5468111, at *16 (W.D. Pa. Sep. 29, 2016) ("[A] penal provision that also provides a civil cause of action . . . is subject to [the rule of lenity]."); *see generally* 18 Pa. C.S. § 5702 (setting forth definitions to be used in both criminal and civil provisions of Pennsylvania Wiretap Act).

Recognizing that software code is not a "device" under this statute, Mr. Schnur alleges for the first time in his Amended Complaint that his own "computer" or "mobile phone" is the requisite intercepting "device," and that the software code "instruct[s] the hardware components" of that device to intercept the communications.  Am. Compl. ¶ 69.  But this conclusory statement is unsupported by any facts.  *See Iqbal*, 556 U.S. at 678.  Moreover, it is inconsistent with Mr. Schnur's other allegations that the session replay code "embedded into Papa John's website" intercepted Mr. Schnur's purported communications (*e.g.*, "mouse movements," "keystrokes,") *from* his computer and mobile phone.  Am. Compl. ¶¶ 1, 55–57, 74.  Thus, Mr. Schnur's computer or mobile phone "was the origin of the intercepted message, and not the device that purportedly intercepted that message."  *Commonwealth v. Diego*, 119 A.3d 370, 374 (Pa. Super. Ct. 2015) (computer tablet that originated the intercepted communications was not the relevant "device").

***No Acquisition of "Contents."***  The Amended Complaint also fails to plausibly allege that the information at issue constitutes "contents" within the meaning of the Pennsylvania Wiretap Act.  That statute, like its federal counterpart, defines "contents" as "any information concerning

---

2d 644, 661–62 (E.D. Tenn. 2012) (same); *Luis v. Zang*, 833 F.3d 619 (6th Cir. 2016) (assuming without analysis that certain software was device under federal law when neither party argued it was not); *Shefts v. Petrakis*, 2012 WL 4049484, at *8–9 (C.D. Ill. Sept. 13, 2012) (same); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1084–87 (N.D. Cal. 2015) (finding that certain mobile phone software was a device on narrow grounds specific to exemption in federal law not present in Pennsylvania Wiretap Act).

the substance, purport, or meaning of that communication." *See* 18 Pa. C.S. § 5702; 18 U.S.C. § 2510(8); *see also Fraser*, 352 F.3d at 113 n.6 (interpreting federal Wiretap Act "in the same way" as Pennsylvania counterpart). But "contents" "does not include record information regarding the characteristics of the message that is generated in the course of the communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014); *see also In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 136–37 (3d Cir. 2015) (recognizing similar distinction).

The Amended Complaint contends that Papa John's collected visitors' "mouse movements, clicks, keystrokes . . . URLs of web pages visited, and/or other electronic communications." *See* Am. Compl. ¶¶ 1, 25, 48–49, 61. But unspecified online "movements" while browsing a website do not constitute "contents" because they "d[o] not convey the substance of any particular communication." *Goldstein v. Costco Wholesale Corp.*, 559 F. Supp. 3d 1318, 1321–22 (S.D. Fla. 2021) (holding that mouse movements, clicks, pages visited, and keystrokes, including information input by plaintiff, were not "contents" under Florida wiretapping law); *accord Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082–83 (C.D. Cal. 2021) (holding that clicks, pages visited, and keystrokes, including shipping and billing information, were not "content" under California wiretap law).[9] And Mr. Schnur's new theory that he communicated to Papa John's the "pizza he wanted" (Am. Compl. ¶ 59) does not transform online clicks and keystrokes into contents, just as the *Yoon* plaintiff's online purchase did not turn her similar online activity into actionable content. *See* 549 F. Supp. 3d at 1077, 1082–83 (keystrokes and mouse clicks about purchases not content).[10]

---

[9] Mr. Schnur also alleges in a conclusory manner that his so-called communications were "sent" to session replay providers. Am. Compl. ¶ 61. Since Mr. Schnur has not plausibly alleged a predicate unlawful interception, however, there can be no derivative liability for disclosing or using any communications. *See Walsh v. Krantz*, 386 F. App'x 334, 340 (3d Cir. 2010).

[10] Even if Papa John's "value[d]" the data it allegedly intercepts, Am. Compl. ¶ 71, nothing in the Pennsylvania Wiretap Act or caselaw suggests that the value of data determines whether it is

***No Contemporaneous Interception.***   Mr. Schnur also fails to plausibly allege that any interception occurred contemporaneously with transmission.   Mr. Schnur characterizes the supposed interception as occurring in "real-time" and "contemporaneously with . . . transmission," Am. Compl. ¶¶ 1, 8, 96, 99, but conclusory adjectives are not well-pled facts.   *See Iqbal*, 556 U.S. at 678; *Cardoso*, 2021 WL 2820822, at *2 (concluding in "session replay" case that "plaintiff failed to adequately allege . . . that interception was contemporaneous with transmission").   And such an unsupported conclusion is at odds with other allegations in the Amended Complaint.   *E.g.*, Am. Compl. ¶ 23 (alleging that "session replay" technology may record data not yet submitted "to the website operator"), *id.* ¶ 25 (alleging that recorded "[e]vents are typically accumulated and transmitted in blocks periodically throughout the user's website session"), *id.* ¶ 27 (alleging that "session replay" technology allows a website operator to "view a visual reenactment of the user's visit . . . usually in the form of a video").   One court has noted that similar "session replay" allegations in another case suggested retrieval from storage as opposed to contemporaneous interception.   *See Jacome*, 2021 WL 3087860, at *6 (holding that bare conclusion "without pleading any ultimate facts in support [is] insufficient to demonstrate that any interception happened contemporaneously with transmission").

***Direct Recipient***.   Papa John's maintains that, as a direct recipient of data allegedly collected, no wiretapping claim can be maintained against it.   "[W]here a party receives information from a communication as a result of being a direct party to the communication, there is no interception."   *Commonwealth v. Proetto*, 771 A.2d 823, 831 (Pa. Super. 2001), *aff'd*, 837

---

contents.   *See Gonzalez v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1085 (N.D. Cal. 2018) ("[N]othing in the [federal] Wiretap Act suggests that *how* an intercepting party uses a communication determines whether the communication involves 'content' within the Act's meaning.").

A.2d 1163 (Pa. 2003); *accord Commonwealth v. Cruttenden*, 58 A.3d 95, 98–100 (Pa. 2012);
*Diego*, 119 A.3d at 380–81.   Mr. Schnur's alleged communications were made to Papa John's.
*See* Am. Compl. ¶¶ 1, 22, 56.   "By receiving [a] communication directly," Papa John's was a party
to the communication, so "there was no eavesdropping or listening in, and no interception took
place." *Cruttenden*, 58 A.3d at 98–100 (citation omitted).   Since the Third Circuit has thus far
limited the "direct recipient" defense to the law enforcement context, Papa John's presents this
argument to preserve the defense for appeal based on contrary state caselaw.   *See Popa*, 52 F.4th
at 128–29; *but see Diego*, 119 A.3d at 380–81 (applying direct-party exception even when "no law
enforcement officer was a direct party to the communication").

### 2.   All Parties Consented to Papa John's Data Practices.

Mr. Schnur's wiretapping claim also fails because he consented to the data practices he
challenges.   The Pennsylvania Wiretap Act does not prohibit the interception of a communication
"where all parties to the communication have given prior consent to such interception."   18 Pa.
C.S. § 5704(4).   As the Third Circuit has explained, "if someone consents to the interception of
her communications with a website, the [Pennsylvania Wiretap Act] does not impose liability."
*Popa*, 52 F.4th at 132.   Here, Papa John's clearly consented, and the circumstances of the alleged
interception confirm that Mr. Schnur consented as well.

In his Amended Complaint, Mr. Schnur alleges that when he visited Papa John's website,
he purchased food.   *See* Am. Compl. ¶¶ 58–59.   As anyone who purchases food on Papa John's
website must do, Mr. Schnur had to check a box confirming that he "underst[oo]d & agree[d] [his]
information [would] be used as described in the Privacy Policy" every time he placed an order for
food.   *See* Hall Decl., ¶¶ 3–5, Ex. 1.   Though the Amended Complaint fails to mention this
confirmation when describing the ordering process (*see* Am. Compl. ¶¶ 58–59), Mr. Schnur could
not have ordered food on Papa John's website without expressly acknowledging that he understood

and agreed that data about his visit would be collected, used, and shared with service providers. *See* Hall Decl. ¶ 5; *see supra* at 2.  Mr. Schnur's express consent is fatal to his claim.

But even if, for sake of argument, Mr. Schnur had not expressly agreed to the Privacy Policy, or it was "overlook[ed]" as he implies (Am. Compl. ¶ 75), the outcome would be the same because consent under Pennsylvania law does not require "actual knowledge that [a communication] is being recorded."  *See Commonwealth v. Byrd*, 235 A.3d 311, 319 (Pa. 2020).  Indeed, implied consent will defeat a Pennsylvania Wiretap Act claim.  *Id.*; *see also Popa*, 52 F.4th at 132 (prior consent can be exist even though the plaintiff "claims she never saw the [privacy] policy").  "'[P]rior consent' can be demonstrated when the person being recorded 'knew *or should have known*[] that the conversation was being recorded.'"  *Byrd*, 235 A.3d at 319 (italics added) (citation omitted).  The standard is "one of a reasonable person" under the circumstances.  *Id.* at 319–20 (prisoner "consent[ed] by conduct" when he spoke to a visitor after receiving a warning that his call "may be monitored or recorded" because a "reasonably intelligent person" in such circumstances would know he was being recorded).

As noted, Papa John's Privacy Policy—linked on every page of its website—disclosed that Papa John's "will share information with others who perform services on [its] behalf," including "vendors . . . maintaining and operating [its] web site and app[s], [and providing] data analytic services, and other business purposes."  *See* Papa John's Privacy Policy; Song Decl. Ex. 1.[11]  And

---

[11] The Amended Complaint cites to and explicitly references Papa John's Privacy Policy, *see* Am. Compl. ¶ 75, so this Court may consider it.  *See In re Lipitor Antitrust Litig.*, 868 F.3d 231, 249 (3d Cir. 2017) (courts may consider documents referred to in complaint on motion to dismiss); *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (courts may consider "matters incorporated by reference or integral to the claim [as well as] items subject to judicial notice"); *Inman v. Technicolor USA, Inc.*, 2011 WL 5829024, at *4 (W.D. Pa. Nov. 18, 2011) (considering user agreement posted on website that was "integral to the complaint").  The Amended Complaint also describes the order flow (Hall Decl. Ex. 1) of purchases made on Papa John's website, *see* Am. Compl. ¶¶ 58–59, so the Court may consider that flow as incorporated by reference.

even in the absence of any privacy policy or the purchase requirement that Mr. Schnur expressly

acknowledge it, a reasonable person's knowledge that he is being recorded may be "surmised from

the very nature of the selected means of transmission." *Diego*, 119 A.3d at 377.  One such means

of transmission is the Internet; "[a]ny reasonably intelligent person, savvy enough to be using the

Internet . . . would be aware of the fact that messages are received in a recorded format, by their very

nature." *Proetto*, 771 A.2d at 829.  "Most of us understand that what we do on the Internet is not

completely private," and that "our data has to be going somewhere . . . feeding an entire system of

trackers, cookies, and algorithms." *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 266 (3d

Cir. 2016).  "By the very act of sending a communication over the Internet," then, a website visitor

"expressly consents to the recording of the message." *Proetto*, 771 A.2d at 829.

Both from Papa John's Privacy Policy and the nature of Internet transmissions, Mr. Schnur

at least "should have known" that his website interactions would be collected and used by Papa

John's.[12] *Byrd*, 235 A.3d at 319 ("'[P]rior consent' can be demonstrated when the person being

recorded 'knew or should have known[] that the conversation was being recorded.'"); *Popa*, 52

F.4th at 132 (prior consent "does not require 'actual knowledge'" under Pennsylvania law).

### B.    The Amended Complaint Fails To State a Claim for Intrusion Upon Seclusion.

The Amended Complaint also fails to plead the elements of a claim for intrusion upon

seclusion, which is premised on the same alleged conduct underlying the Wiretap Act claim.[13]

The intrusion upon seclusion claim requires (1) an intentional intrusion, (2) upon the solitude or

---

[12] For the same reasons, Mr. Schnur's allegation that the interception began as soon as he reached
the website (Am. Compl. ¶ 75) makes no difference.

[13] While Mr. Schnur alleges that a right to privacy is "also embodied in . . . the Pennsylvania
constitution," Am. Compl. ¶ 104, that right "does not encompass invasions of privacy committed
by *private actors*." *Brooks Grp. & Assocs., Inc. v. LeVigne*, 2014 WL 1490529, at *11 & n.72
(E.D. Pa. Apr. 15, 2014) (italics added) (citation omitted) (no Pennsylvania constitutional invasion
of privacy claim where the plaintiff "alleges no governmental action").

seclusion of another, (3) in a manner that "would be highly offensive to a reasonable person."
*Kline v. Sec. Guards, Inc.*, 386 F.3d 246, 260 (3d Cir. 2004) (applying Pennsylvania law) (citations omitted).  The Amended Complaint alleges no facts plausibly showing any of those elements.

*First*, the Amended Complaint does not plausibly show that Papa John's committed an intentional intrusion.  Under Pennsylvania law, a defendant commits an intentional intrusion "only if he believes, or is substantially certain, that he lacks the necessary legal or personal permission to commit the intrusive act."  *O'Donnell v. United States*, 891 F.2d 1079, 1083 (3d Cir. 1989).  The Amended Complaint alleges no facts plausibly showing any such belief by Papa John's.  Indeed, given Papa John's express disclosure of the challenged data practices on its website, the only reasonable inference is that Papa John's had, or reasonably believed it had, permission to engage in that activity.  *See Gray v. Amazon.com, Inc.*, – F. Supp. 3d –, 2023 WL 1068513, at *8 (W.D. Wash. Jan. 27, 2023) (dismissing intrusion claim for failure to allege requisite intent under *O'Donnell* where plaintiffs "were on notice" of policies permitting complained-of data practices).

*Second*, Mr. Schnur had no reasonable expectation of privacy over routine web-based information that he voluntarily provided to Papa John's.  *See Kline*, 386 F.3d at 260 (explaining that an intrusion "cause of action also requires that the plaintiff have a reasonable expectation of privacy"); *accord Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 525 (C.D. Cal. 2021) (holding that plaintiff in "session replay" case had no reasonable expectation of privacy over similar data voluntarily provided to website operator).  Nor would any such expectation have been reasonable given the express disclosures in Papa John's Privacy Policy.  *See, e.g.*, *United States v. Bowers*, 2021 WL 2882438, at *3 (W.D. Pa. July 8, 2021) ("[W]hen a person is forewarned of the possible disclosure of information, courts have held privacy interests are not objectively reasonable.").

*Third*, the Amended Complaint does not and cannot plausibly allege that the alleged data practices at issue would be "highly offensive" to a reasonable person.  Under Pennsylvania law, a "highly offensive" intrusion is one that "would have caused mental suffering, shame or humiliation to a person of ordinary sensibilities."  *Pro Golf Mfg., Inc. v. Tribune Rev. Newspaper Co.*, 809 A.2d 243, 248 (Pa. 2002).  "This is a stringent standard."  *Boring v. Google, Inc.*, 598 F. Supp. 2d 695, 700 (W.D. Pa. 2009), *rev'd in part on other grounds*, 362 F. App'x 273 (3d Cir. 2010).  And claims based on alleged conduct far more offensive than that at issue here have been dismissed for failing to meet this bar.  *See, e.g.*, *Chicarella v. Passant*, 494 A.2d 1109, 1113–14 (Pa. Super. 1985) (dismissing claim based on investigators' use of "pretext" to obtain plaintiff's personal medical records); *Nagy v. Bell Tel. Co. of Pa.*, 436 A.2d 701, 704–05 (Pa. Super. 1981) (dismissing claim based on deliberate efforts to persuade phone company to disclose phone numbers dialed by plaintiff).  As another court in this district put it, "[t]he act of collecting [a plaintiff's] keystrokes, mouse clicks, and PII is simply not the type of highly offensive act to which liability can attach."  *Popa*, 426 F. Supp. 3d at 122–23 (dismissing intrusion claim).  Accordingly, Mr. Schnur fails to state a viable intrusion upon seclusion claim.

## CONCLUSION

For the reasons set forth above, and because "any [further] amendment would be futile," this Court should dismiss the Amended Complaint with prejudice.  *Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 217 (3d Cir. 2013); *see also Kennedy v. Help at Home, LLC*, 731 F. App'x 105, 108 (3d Cir. 2018) ("Because [plaintiff] has not identified an adequate basis for exercising personal jurisdiction over [defendant], dismissal with prejudice was proper.").

Dated:  April 21, 2023                    Respectfully Submitted:


                                          /s/ *Stephen F. Raiola*

                                          Peter St. Tienne Wolff (PA. I.D. No. 208433)
                                          psw@pietragallo.com
                                          Stephen F. Raiola (PA. I.D. No. 329983)
                                          sfr@pietragallo.com
                                          PIETRAGALLO GORDON ALFANO
                                          BOSICK & RASPANTI LLP
                                          One Oxford Centre, 38th Floor
                                          Pittsburgh, PA 15219
                                          Telephone: (412) 263-4352
                                          Facsimile: (412) 263-4252

                                          Emily Johnson Henn (*pro hac vice*)
                                          ehenn@cov.com
                                          COVINGTON & BURLING LLP
                                          3000 El Camino Real
                                          5 Palo Alto Square, 10th Floor
                                          Palo Alto, CA 94306-2112
                                          Telephone: (650) 632-4700
                                          Facsimile: (650) 632-4800

                                          Eric Bosset (*pro hac vice*)
                                          ebosset@cov.com
                                          COVINGTON & BURLING LLP
                                          One CityCenter
                                          850 Tenth Street, NW
                                          Washington, DC 20001
                                          Telephone: (202) 662-6000
                                          Facsimile: (202) 778-5606

                                          Kanu Song (*pro hac vice*)
                                          ksong@cov.com
                                          COVINGTON & BURLING LLP
                                          Salesforce Tower
                                          415 Mission Street, Suite 5400
                                          San Francisco, CA 94105-2533
                                          Telephone: 415-591-7065
                                          Facsimile: 415-955-6524

                                          *Attorneys for Defendant*
                                          *Papa John's International, Inc.*