## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JORDAN SCHNUR, individually and on behalf of all others similarly situated, | ) ) ) ) | 2:22-CV-1620-NR |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| PAPA JOHN'S INTERNATIONAL, INC., d/b/a PAPA JOHNS | ) ) ) | |
| Defendant. | ) ) ) | |

## OPINION

Plaintiff Jordan Schnur brings this putative class action against Defendant Papa Johns, alleging violations of the Pennsylvania Wiretap Act and common law intrusion upon seclusion. Papa Johns has moved to dismiss the complaint for lack of personal jurisdiction and for failure to state a claim on which relief can be granted. For the reasons below, the Court finds that it lacks personal jurisdiction over Papa Johns, and so the Court will grant Papa Johns's motion on that basis.

## BACKGROUND

As alleged in the First Amended Complaint, and taken as true, Papa Johns[1] procures software (called Session Replay Code) from third-party vendors to embed on its website, www.papajohns.com. ECF 24, ¶ 1. When a user goes to Papa Johns's

---

[1] Papa John's International, Inc. is an international corporation incorporated in Delaware, with its principal place of business in Atlanta, Georgia. ECF 24, ¶ 6. It does business under the name "Papa Johns" (no apostrophe), and the Court refers to it by this trade name in this opinion. *See* Michael Bartiromo, *Papa John's is changing its name—sort of*, Fox2 Now (Nov. 17, 2021, 11:09 AM), https://fox2now.com/news/national/papa-johns-is-changing-its-name-sort-of/ ("The pizza chain, which formerly used the possessive form of 'Papa John's' for its branding and marketing, will now be known as 'Papa Johns' for all customer-facing purposes and written references going forward.").

website, the Session Replay Code records a video "of the user's behavior on the website," including the mouse movements, clicks, keystrokes, and text information that the user enters in forms or text boxes. *Id.* ¶¶ 1-2, 49. One of the code's purposes is to provide Papa Johns with "insights into the user experience" and, in turn, "improve customer experiences." *Id.* ¶¶ 12, 22.

Mr. Schnur is a Pennsylvania resident who visited the Papa Johns website. *Id.* ¶¶ 5, 55. During his visits, he browsed for deals and purchased food from Papa Johns, which entailed clicking on the food he wanted to purchase and entering his contact, delivery, and payment information. *Id.* ¶¶ 58-59, 61. The website also directed Mr. Schnur to a local Papa Johns brick-and-mortar store so that he could order his food for pick-up or delivery to his home. *Id.* ¶ 59. Mr. Schnur alleges that the Session Replay Code captured all this information during his visits to the website, in violation of the Pennsylvania Wiretap Act and his common law privacy rights. *Id.* ¶¶ 61-71.

Papa Johns moved to dismiss the First Amended Complaint on two grounds: (1) that Papa Johns is not subject to general or specific personal jurisdiction, and (2) that the complaint fails to state a claim under the Pennsylvania Wiretap Act and for intrusion upon seclusion. ECF 27; ECF 28. Mr. Schnur opposes the motion. ECF 31.

On July 27, 2023, the Court heard oral argument from the parties in this case, as well as the parties in a similar case, *Cook v. Gamestop, Inc.*, 2:22-CV-1292. ECF 48. The motion is now ready for disposition.

## <u>DISCUSSION & ANALYSIS[2]</u>

Recently, courts across the country have been presented with the question of whether a defendant that employs Session Replay Code on its website is subject to

---

[2] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Any reasonable

the personal jurisdiction of the forum. *E.g.*, *Hasson v. FullStory, Inc.*, No. 22-1246, 2023 WL 4745961, at *1 (W.D. Pa. July 25, 2023) (Horan, J.); *Alves v. Goodyear Tire & Rubber Co.*, No. 22-11820, 2023 WL 4706585, at *1 (D. Mass. July 24, 2023); *Mikulsky v. Noom, Inc.*, No. 23-285, 2023 WL 4567096, at *2 (S.D. Cal. July 17, 2023). The courts in those cases answered that question in the negative. This Court concurs with the conclusions in those cases and finds that the First Amended Complaint fails to establish that Papa Johns is subject to personal jurisdiction in Pennsylvania.

"The plaintiff bears the burden of establishing personal jurisdiction. Where the Court is sitting in diversity, the Court applies the law of the forum state, which, in this case, is Pennsylvania. Pennsylvania's long-arm statute extends to the limit of federal due process. Accordingly, in order to demonstrate personal jurisdiction, the plaintiff must show that: (1) the defendant has constitutionally sufficient minimum contacts with the forum, and (2) the exercise of jurisdiction would comport with traditional notions of fair play and substantial justice." *Hasson*, 2023 WL 4745961, at *1 (cleaned up).

Mr. Schnur does not argue that Papa Johns is subject to general personal jurisdiction in Pennsylvania; nor could he, because Papa Johns is neither incorporated nor has its principal place of business in Pennsylvania. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) ("With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general

---

inferences should be considered in the light most favorable to the plaintiff. *See Lula v. Network Appliance*, 255 F. App'x 610, 611 (3d Cir. 2007) (citing *Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989)). This is also true on a motion to dismiss for lack of personal jurisdiction. *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) ("[I]n deciding a motion to dismiss for lack of jurisdiction, a court is required to accept the plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff." (cleaned up)). Thus, all well-pled factual allegations are construed in favor of Mr. Schnur for purposes of this motion.

jurisdiction." (cleaned up)).  So for Mr. Schnur to prevail, there must be a basis to confer specific jurisdiction over Papa Johns.  The Court concludes that none exists.

I.     **There is no personal jurisdiction under the *Calder* test.**

The parties agree that the relevant test for specific personal jurisdiction in this case is the "effects" test set out in *Calder v. Jones*, which "is satisfied if the defendant committed (1) an intentional tort, (2) the forum bore the brunt of the harm and was the focal point of the harm suffered, and (3) the tortious conduct was expressly aimed at the forum state."  *Kyko Glob., Inc. v. Bhongir*, 807 F. App'x 148, 152 (3d Cir. 2020) (cleaned up).  The Court finds that Mr. Schnur cannot satisfy the third element of the *Calder* test—that Papa Johns's use of Session Replay Code was expressly aimed at Pennsylvania.[3]

A.     **Papa Johns does not "expressly aim" its website at Pennsylvania.**

To establish the "expressly aimed" element of the *Calder* test, Mr. Schnur must show "that the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum."  *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 266 (3d Cir. 1998).  Neither of those elements is present in this case.

Mr. Schnur does not plead that Papa Johns knew that he "would suffer the brunt of the harm" caused by embedding its website with Session Replay Code.  To the contrary, the complaint makes clear that Papa Johns deploys the code indiscriminately to a national audience.  ECF 24, ¶ 44 (Papa Johns targets a "national audience" "in order to drive customers to its website."); *id.* ¶ 46 ("unbeknownst to the

---

[3] Since Mr. Schnur cannot establish the "expressly aimed" element, the Court need not consider the other elements.  *Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007) ("Only if the 'expressly aimed' element of the effects test is met need we consider the other two elements." (citation omitted)).

millions of individuals perusing Papa John's website, Papa John's intentionally procures and embeds various Session Replay Codes from Session Replay Providers on its website to track and analyze website user interactions with www.papajohns.com."). Mr. Schnur readily admits that Papa Johns's website is "nationally available," "designed to attract a nationwide audience," and "the central focus of Papa John's business model." ECF 31, pp. 6-7. And except for one conclusory allegation in the complaint, there is no suggestion that Papa Johns's website distinguishes users in Pennsylvania in a manner that's different for visitors in other states. ECF 24, ¶ 8 (Papa Johns "knew that its practices would directly result in collection of information from Pennsylvania citizens while those citizens browse www.papajohns.com from devices located in Pennsylvania.").

Nor does Mr. Schnur allege that Papa Johns expressly aimed its tortious conduct at Pennsylvania. The thrust of Mr. Schnur's allegations relates to his interactions with the Papa Johns website that was "armed" with Session Replay Code. ECF 24, ¶ 55; ECF 31, p. 10 ("[Papa Johns] knowingly armed that website with software that initiates a broad-spectrum wiretap . . . [and] it was this action by Papa John's . . . that led to this lawsuit being filed."). But there are no allegations in the complaint asserting that the act of "arming" the website with Session Replay Code was expressly aimed at Pennsylvania, or that would permit the Court to infer that fact. *See Hasson*, 2023 WL 4745961, at *2 ("Mr. Hasson has pled insufficient facts to demonstrate that FullStory expressly aimed its conduct at Pennsylvania through the Mattress Firm website."). In fact, quite the opposite—as discussed, Papa Johns's website had a "national" reach. It would be directly contrary to that strategy, and Mr. Schnur's own allegations, for the Court to conclude that Papa Johns's website specifically targets Pennsylvanians. *Mikulsky*, 2023 WL 4567096, at *8 (no personal jurisdiction where "[t]here are no allegations regarding whether Defendant's use of

Session Replay Code specifically targets California users" or "that the Website specifically targets Californians." (cleaned up)).

Additionally, the "website itself" cannot create personal jurisdiction simply by "reach[ing] in[to] Pennsylvania." ECF 31, p. 11. That's because "[m]ere operation of a [globally accessible] website does not cause a website provider . . . to expressly aim its conduct at the forum state." *Hasson*, 2023 WL 4745961, at *2; *see also Alves*, 2023 WL 4706585, at *6 ("The mere availability of a generally accessible website operated out-of-state, however, is not enough of a connection to warrant this Court's exercise of personal jurisdiction." (citation omitted)). Nothing in the complaint suggests Papa Johns specifically targeted people in Pennsylvania with its Session Replay Code—as explained, the complaint alleges that the website is generally available to everyone, no matter where they are located. ECF 24, ¶¶ 43-44 (alleging "Papa John's website is a central focus point of Defendant's business model. The website allows website visitors to order pizza and other foods and beverages for delivery or carryout from nearby stores (including in Pennsylvania)" and referring to national marketing "to drive customers to its website").

Thus, it cannot be said Papa Johns expressly aimed its tortious conduct at Mr. Schnur or the forum of Pennsylvania.

**B. The existence of brick-and-mortar Papa Johns stores in Pennsylvania is irrelevant to establishing personal jurisdiction in this case.**

For those same reasons, the presence of 85 brick-and-mortar Papa Johns stores in Pennsylvania doesn't help Mr. Schnur establish personal jurisdiction. ECF 31, p. 7 (Mr. Schnur arguing, "Why else would [Papa Johns] create and maintain a website that enables individuals to order pickup and delivery from 85 brick-and-mortar locations in Pennsylvania, if Papa Johns was not expressly attempting to profit from Pennsylvania citizens?"). The presence or absence of Papa Johns stores doesn't touch

on the relevant tortious conduct in this case—which is the use of Session Replay Code to instantaneously capture Mr. Schnur's interactions with Papa Johns's website, no matter where he is located.  ECF 24, ¶ 60.  So the mere existence of brick-and-mortar stores cannot show that Papa Johns expressly aimed its tortious conduct at Pennsylvania.  *Cf. Sacco v. Mouseflow, Inc.*, No. 20-2330, 2022 WL 4663361, at *5 (E.D. Cal. Sept. 30, 2022) (no personal jurisdiction where "the alleged harm—the recording of Plaintiff's visit to the worldofwarcraft.com website and the collection of his personal data—would have occurred no matter the state Plaintiff was in.").[4]

    **C.**    **Mr. Schnur's cases are unconvincing.**

The cases on which Mr. Schnur relies are unpersuasive.  One case is inapposite.  *S.D. v. Hytto Ltd.*, No. 18-688, 2019 WL 8333519, at *2 (N.D. Cal. May 15, 2019) (analyzing personal jurisdiction under Rule 4(k)(2) and "focus[ing] on a defendant's contacts with the U.S. as a whole rather than on contacts with a particular forum state").  And the three other cases are distinguishable because they concerned claims that, unlike here, specifically targeted the plaintiffs in their fora.  *Bergstein v. Parmar*, No. 13-6167, 2014 WL 12586073, at *3 (C.D. Cal. June 23, 2014) (defendant recorded specific plaintiff's telephone conversations); *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 354-55 (4th Cir. 2020) (website used location-based advertising to specifically target Virginia-based website visitors, rather than using a widely-available website "that happens to be accessible in Virginia"); *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1230 (9th Cir. 2011) (personal jurisdiction

---

[4] Mr. Schnur seems to admit as much; he purports to represent only those people "whose Website Communications were captured in Pennsylvania through the use of Session Replay Code embedded in www.papajohns.com."  ECF 24, ¶ 76; *see also* ECF 31, p. 16 n.3 (referring to Mr. Schnur's and class members' "website visits where they did not order food").

found where defendant "operated a very popular website with a specific focus on the California-centered celebrity and entertainment industries").

By contrast, the only thing that specifically connects Papa Johns's website to Pennsylvania in this case is Mr. Schnur's interaction with it. That isn't enough to establish personal jurisdiction. *Hasson*, 2023 WL 4745961, at *2 ("In analyzing the 'expressly aimed' element, the plaintiff cannot be the only link between the defendant and the forum." (cleaned up)); *see Alves*, 2023 WL 4706585, at *4 ("The only reason why www.goodyear.com interacted with a browser located in Massachusetts is that [Plaintiff] accessed the website in the State.").

"What is needed—and what is missing here—is a connection between the forum and the specific claims at issue." *Mikulsky*, 2023 WL 4567096, at *8 (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 255 (2017)). Since there is no basis for the Court to conclude that Papa Johns expressly aimed its Session Replay Code at Pennsylvania, the Court finds that personal jurisdiction under *Calder* does not exist.

## II. Personal jurisdiction does not exist under the "traditional" test either.

The parties have also briefed whether personal jurisdiction could be established under the "traditional" test outlined in *O'Connor v. Sandy Lane Hotel Co.* 496 F.3d 312, 317 (3d Cir. 2007).[5] This test really doesn't apply because, as the Third Circuit stated in *O'Connor*, the *Calder* test "applies to intentional tort claims," as the parties agree is the case here. 496 F.3d at 317 n.2; *Hasson*, 2023 WL 4745961, at *2 ("Because Mr. Hassan's wiretapping and intrusion upon seclusion claims constitute intentional torts, the *Calder* test applies in this case." (citation omitted)); ECF 28, p.

---

[5] The elements of that test are: (1) that the defendant purposefully directed its activities at the forum; (2) that the litigation arises out of or relates to those activities; and (3) that the exercise of personal jurisdiction comports with notions of fair play and substantial justice. *O'Connor*, 496 F.3d at 317.

4; ECF 31, p. 4.  But the Court will address both tests anyway because they "are cut from the same cloth." *Marten*, 499 F.3d at 297 (cleaned up).

"Just as the standard test prevents a defendant from being haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, the effects test prevents a defendant from being haled into a jurisdiction solely because the defendant intentionally caused harm that was felt in the forum state if the defendant did not expressly aim his conduct at that state." *Id.* (cleaned up).  In other words, the tests embody the basic idea that a "plaintiff's claims must arise out of or relate to the defendant's contacts with the forum." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021) (cleaned up).  But that aspect is lacking in this case, so Mr. Schnur's complaint fails to establish personal jurisdiction under the *O'Connor* test, too.

Mr. Schnur argues that Papa Johns, by conducting business in Pennsylvania, including by using a website to "direct[ ] Pennsylvanians" to brick-and-mortar stores, has established sufficient contacts with the forum.  ECF 31, p. 8 (referring to "Papa John's coordinated efforts to maximize sales revenue in Pennsylvania" and "carrying on part of its general business in the state" (cleaned up)).  And because Mr. Schnur's claims concern that website—specifically, the intercept of Pennsylvania-based communications while on that website—they "relate to" Papa Johns's contacts with the forum.  *Id.*; *see also* ECF 50 (Oral Argument Tr.), 51:5-52:6 (Plaintiff's counsel: "you don't have to have the conduct that gave rise to the violation being the only intentional target. . . .  [B]ut there is other conduct by the Defendant that has targeted Pennsylvania, and you have to look at all those, and you don't have to separate them out.  The violation can arise from something that's broad, for instance, and perhaps not specifically targeted to Pennsylvania, as long as there is an intentional targeting

of Pennsylvania generally, and here we have that with all the brick-and-mortar stores.").

But that isn't correct.  There must be some "relationship among the defendant, the forum, *and the litigation*."  *Ford Motor Co.*, 141 S. Ct. at 1028 (emphasis added). In other words, it's not enough that Papa Johns merely does business or markets its products in Pennsylvania with a website—rather, that fact must relate to Mr. Schnur's allegations that Papa Johns invaded his privacy through digital eavesdropping.  *Id.* (fact pattern where "a resident-plaintiff sues a global car company, extensively serving the state market in a vehicle, for an in-state accident" is "a paradigm example . . . of how specific jurisdiction works").  That relationship is absent here.

Mr. Schnur's claims in this case "have nothing to do with" Papa Johns's marketing or sale of pizza in Pennsylvania "or any other conduct" by Papa Johns aimed at Pennsylvania.  *Massie v. Gen. Motors Co.*, No. 20-1560, 2021 WL 2142728, at *6 (E.D. Cal. May 26, 2021).  Instead, the complaint hinges purely on browsing the website; Mr. Schnur seems to agree because he suggests that his claims are just as valid in instances where he visited the website but didn't order anything.  *See* ECF 31, p. 16 n.3.  And that's because the presence of stores in Pennsylvania or the ability to purchase pizza are just window-dressing—neither fact underlies (or even relates to) Mr. Schnur's claim of digital eavesdropping.  *See Hepp v. Facebook*, 14 F.4th 204, 208 (3d Cir. 2021) ("[N]one of these contacts forms a strong connection to the misappropriation of Hepp's likeness.  Hepp did not allege the merchandise featured her photo.  Nor did she allege Imgur and Reddit used her likeness to sell advertising. Finally, she did not claim the photo was taken, uploaded, or hosted in Pennsylvania.").  What the complaint really needs is a specific connection between

Pennsylvania, Papa Johns, and the deployment of Session Replay Code on its website. But nothing establishes that link.[6]

Mr. Schnur tries one last time to make that connection by reframing the issue. He argues that because the "intercept" of his interactions with the website occurred in Pennsylvania, the "tortious conduct" at issue also occurred in Pennsylvania.  ECF 31, p. 10 n.2.  This argument falls short because it incorrectly focuses on the place of Mr. Schnur's injury.  "[T]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."  *Alves*, 2023 WL 4706585, at *4 (cleaned up); *see also Walden v. Fiore*, 571 U.S. 277, 290 (2014) ("[A]n injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State.").  But the complaint does not establish that the deployment of Session Replay Code on the website occurred in Pennsylvania—in fact, it is reasonable to infer the opposite given Papa Johns is a Delaware corporation with its principal place of business in Georgia.  *Alves*, 2023 WL 4706585, at *4 ("[I]t is reasonable to infer that Goodyear and Microsoft contracted for the procurement of Session Replay Code technology outside Massachusetts," so "Goodyear's procurement and use of Session Replay Code technology relate to conduct occurring outside of Massachusetts, and so does this dispute.").

---

[6] Mr. Schnur's reliance on *Ford Motor Co.* is misplaced.  There, the Supreme Court held that Ford had established sufficient contacts with the forum states where it "systematically served" those forums to market "the very vehicles that the plaintiffs allege malfunctioned and injured them in those States."  *Ford Motor Co.*, 141 S. Ct. at 1028.  Likewise, the Supreme Court in *Keeton v. Hustler Mag., Inc.* concluded that personal jurisdiction existed in a libel action where Hustler circulated the purportedly libelous magazines in the forum state.  465 U.S. 770, 773 (1984).  In both cases, the defendants had a clear relationship to both the relevant forum ***and*** the subject of the litigation because the suits concerned the specific product that the defendants were marketing and circulating in their fora.  That is missing in Mr. Schnur's complaint.

III.   **The Court will not allow jurisdictional discovery or grant leave to amend.**

Mr. Schnur has not specifically requested any jurisdictional discovery, but the Court is cognizant of its duty to examine whether discovery would be appropriate for a plaintiff to establish personal jurisdiction.  *See Hasson*, 2023 WL 4745961, at *3 ("Parties are entitled to a fair opportunity to engage in jurisdictional discovery" where complaint alleges the existence of personal jurisdiction "with reasonable particularity[.]" (citation omitted)).  Moreover, Mr. Schnur just filed supplemental authority, including a decision from Judge Stickman, in which he allowed jurisdictional discovery in a Session Replay Code case.  ECF 51-1.  So the Court will determine whether jurisdictional discovery is appropriate here.

"Although the plaintiff bears the burden of demonstrating facts that support personal jurisdiction, courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous.'"  *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) (cleaned up).  To that end, courts should permit plaintiffs to conduct jurisdictional discovery where the allegations in the complaint "suggest with reasonable particularity the possible existence of the requisite contacts between the party and the forum state."  *Id.* (cleaned up).

The Court concludes that jurisdictional discovery is not appropriate in this case.  The Court has already taken the facts in the complaint as true and concluded that Mr. Schnur does not suggest with particularity that the requisite contacts exist between Papa Johns, Pennsylvania, and the alleged tortious conduct to establish personal jurisdiction in this case.  Installing Session Replay Code on the Papa Johns website and capturing Mr. Schnur's interactions with it are activities with no connection to Pennsylvania, and no amount of discovery can change that fact.  *Hasson*, 2023 WL 4745961, at *3 ("Mr. Hasson has not proposed that any relevant

jurisdictional facts can be developed to change the ultimate conclusion that personal jurisdiction over FullStory fails in this case.").

Mr. Schnur's supplemental authority does not alter the Court's analysis, either. In that case, Judge Stickman found personal jurisdiction did not exist over defendant Noom where Noom had installed Session Replay Code on its website. *Oliver v. Noom, Inc.*, No. 22-1857, slip op. at 6-10 (W.D. Pa. Aug. 8, 2023) (Stickman, J.). But he permitted the plaintiff to conduct jurisdictional discovery after concluding that the plaintiff had established the "possible existence of the requisite contacts between Noom and the forum state" based on Noom's marketing and selling its services in Pennsylvania and its use of geolocation data. *Id.* at 10-11.

The Court, respectfully, disagrees with that decision. As already explained, Papa Johns's marketing and selling a product in Pennsylvania is an irrelevant contact to the forum. *Massie*, 2021 WL 2142728, at *6. This isn't a false marketing or sales case. Instead, the relevant tortious conduct in the jurisdictional analysis is the act of deploying Session Replay Code on Papa Johns's nationally accessible website, which recorded Mr. Schnur's browsing of that website. *See Ford Motor Co.*, 141 S. Ct. at 1028; *Hustler Mag.*, 465 U.S. at 773.[7]

Finally, the Court finds that amendment in this case would be futile, and so will not grant leave to amend. The Court does not have personal jurisdiction over Papa Johns in this case. The only connection between Papa Johns, the forum, and the deployment of Session Replay Code is that Mr. Schnur happened to access Papa Johns's website while in Pennsylvania; he could just as easily have done so in another

---

[7] *Toys "R" Us* further illustrates the point. The alleged tortious conduct in that case was the defendant's marketing and selling goods identical to those owned by Toys "R" Us on a website. 318 F.3d at 456-57. So the Third Circuit permitted discovery to "shed light on the extent . . . [Defendant's] business activity—including, but not limited to, its web site—were aimed towards the United States." *Id.* at 457. Once again, the relevant connection there was between the defendant, the forum, and the conduct at issue.

forum, and his complaint would not change.  There is no basis by which Mr. Schnur can cure that deficiency.  Accordingly, the Court will dismiss Mr. Schnur's complaint without leave to amend.  *Hasson*, 2023 WL 4745961, at *4.[8]

## IV.    The Court declines to reach the other questions raised in this case.

Since the Court concludes that personal jurisdiction does not exist over Papa Johns, the Court need not reach questions of standing or the sufficiency of the complaint to state a claim. *See Finn v. Great Plains Lending, LLC*, No. 15-4658, 2016 WL 705242, at *1 (E.D. Pa. Feb. 23, 2016) (dismissing complaint on personal jurisdiction grounds and without addressing Article III standing); *Doe v. Hesketh*, 15 F. Supp. 3d 586, 589 (E.D. Pa. 2014) (granting motions to dismiss based on personal jurisdiction and declining to reach Rule 12(b)(6) questions).

## <u>CONCLUSION</u>

For the reasons above, the Court will grant Papa Johns's Motion to Dismiss the First Amended Complaint (ECF 27).  An appropriate order follows.

DATED: August 28, 2023                         BY THE COURT:

                                                         /s/ *J. Nicholas Ranjan*
                                                         United States District Judge

---

[8] If there were additional facts that Mr. Schnur could have pled to bolster personal jurisdiction, he would have already pled them.  He amended once already.  The Court's practices require a meet-and-confer prior to the filing of any motion to dismiss, and so he could have amended at that point too (and then again, even after the motion was filed, under Rule 15(a)).